

SO ORDERED,

Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| ALUMINUM EXTRUSIONS, INC. | ) | Case No.: | 17-12693-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 11 |

| | | | |
|---|---|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALUMINUM EXTRUSIONS, INC. | ) ) ) ) | | |
| | ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | A.P. No.: | 18-01034-JDW |
| TRIUMPH BANK, | ) ) | | |
| Defendant. | ) | | |

### MEMORANDUM OPINION AND ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. ## 67 & 69)

This adversary proceeding is before the Court on the Motion for Summary Judgment (A.P. Dkt. # 67) filed by the Defendant/Counter-Plaintiff, Triumph Bank ("Triumph"), and the Motion for Summary Judgment (A.P. Dkt.

1

# 69)[1] filed by the Plaintiff/Counter-Defendant, The Official Committee of Unsecured Creditors of Aluminum Extrusions, Inc. (the "Committee").

The issue is whether steel dies and aluminum racks, which have been sold by the debtor, should be classified as inventory or equipment under the UCC. Triumph has a lien on the debtor's inventory and is entitled to the sale proceeds if the dies and racks were inventory. If not, the sale proceeds are unencumbered and will be distributed to unsecured creditors.

The Court has considered the evidence, arguments, and relevant law, and finds and concludes that neither party has met its summary judgment burden. Accordingly, both motions are due to be denied.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (K), and (O).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure if "the pleadings, depositions, answers to interrogatories, and

---

[1] Citations to the main bankruptcy docket are to "Bankr. Dkt. # ___." Citations to the adversary proceeding docket are to "A.P. Dkt. #___."

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] The party seeking summary judgment bears the burden of demonstrating to the Court the absence of a genuine issue of material fact.[3] "As to materiality, the Supreme Court has stated that '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"[4]

### III. FACTS

The following facts were stipulated by the parties (Dkt. # 65):

1. The debtor, Aluminum Extrusions, Inc., a manufacturer of aluminum extruded products, filed bankruptcy in 2017.
2. The debtor was engaged in the manufacture and distribution of aluminum extruded products.
3. In 2015, the debtor entered into a loan and security agreement with Triumph, which granted Triumph a security interest in the debtor's inventory.
4. Triumph has a perfected, first-priority security interest in the debtor's inventory.
5. Triumph does not have a security interest in the debtor's equipment.
6. In the bankruptcy case the debtor filed a Motion to Approve Sale Outside the Ordinary Course of Business (the "Sale Motion").
7. Pursuant to the order granting the Sale Motion, the debtor escrowed the amount of proceeds allocated to the sale of the racks and dies, which amounts to approximately $801,000.

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[3] *Id.* at 323.
[4] *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

3

8. The debtor used the steel dies to mold aluminum by heating raw aluminum and then pushing it through the dies to create the shape of the finished product.
9. The debtor did not purchase the dies for the purpose of selling them.
10. Each die was a separate identifiable unit that was assigned a number.
11. The dies were never "used up" such that they were obliterated or no longer in existence.
12. The racks were used to store the finished products that were waiting to be painted or shipped.
13. The debtor did not hold the dies or racks to be furnished under a contract of service.
14. The dies and racks were not raw materials, works in progress, or finished goods.

The Court makes no additional findings of fact. There is competing deposition testimony as to the origins and useful life of the dies and racks and the Court is unable to make the necessary credibility determinations at the summary judgment stage. Those disputed facts are material to the outcome of this adversary proceeding.

## IV. CONCLUSIONS OF LAW

Goods fall within one of four mutually exclusive categories – farm products, consumer goods, inventory, or equipment.[5] Under Mississippi's version of the Uniform Commercial Code (the "UCC")[6], equipment is defined in the negative, as "goods other than inventory, farm products, or consumer

---

[5] UCC § 9-102 [Rev.] cmt. 4(a).
[6] The security agreement provides that disputes are to be governed by Tennessee law. Both parties apply Mississippi law. The distinction is immaterial because the relevant statutes are identical.

4

goods."[7] Clearly the dies and racks are neither farm products nor consumer goods, and neither party has suggested that either of those categories are appropriate. The question is whether the dies and racks are inventory, or if not, equipment by default. Inventory is defined as:

> [G]oods, other than farm products, which:
> (A) Are leased by a person as lessor;
> (B) Are held by a person for sale or lease or to be furnished under a contract of service;
> (C) Are furnished by a person under a contract of service; or
> (D) Consist of raw materials, work in process, or materials used or consumed in a business.[8]

The dies and racks were not leased or held for sale or lease in the ordinary course of business.[9] The parties have stipulated that the dies and racks were not furnished under a contract of service, and were not raw materials or works in process.[10] At issue is whether the dies and racks are considered "materials used or consumed in a business."[11] The principal test to determine whether goods are inventory is if they are held for immediate or ultimate sale in the ordinary course of business.[12] Machinery used in manufacturing is equipment, not inventory, even though the debtor may sell

---

[7] Miss. Code Ann. § 75-9-102(33).
[8] Miss. Code Ann. § 75-9-102(48).
[9] A.P. Dkt. # 65, p. 6 ¶ 38, p. 7 ¶ 41; A.P. Dkt. # 67-4, p. 12 (Ex. B – King Dep. 268:9-12).
[10] A.P. Dkt. # 65, p. 7 ¶ 43-45 and 48-49, p. 8 ¶ 50.
[11] Miss. Code Ann. § 75-3-102(48)(D).
[12] *Amarillo National Bank v. Komatsu Zenoah America, Inc.*, 991 F.2d 273, 276 (5th Cir. 1993) (citing cmt. 3, now UCC § 9-102 [Rev.] cmt. 4(a)) (The Uniform Commercial Code and Official Comment have been revised but retain the criterion that goods are inventory if held for sale or lease in the ordinary course of business).

the good when it becomes obsolete or worn.[13] Examples of materials used or consumed in a business are "fuel to be used in operations, scrap metal produced in the course of manufacture, and containers to be used to package the goods."[14]

In borderline cases where a good might be categorized either way–inventory or equipment–"the principle use of the property is determinative."[15] "The factors to be considered in determining principal use include whether the goods are for immediate or ultimate sale and whether they have a relatively long or short period of use in the business."[16]

> In general, goods used in business are equipment if they are fixed assets or have, as identifiable units, a relatively long period of use, but are inventory, *even though not held for sale or lease, if they are used up or consumed in a short period of time in producing a product or providing a service.*[17]

Triumph argues that the dies and racks are inventory because they are materials used or consumed in a business and have a relatively short period of use. Triumph relies on the testimony of Mr. Markling, the former owner of the debtor, and Mr. King, the former president of the debtor. Mr. Markling testified that the dies were used up or consumed in the manufacturing process and had a very short useful life.[18] He testified that the useful life of a die was always

---

[13] UCC § 9-102 [Rev.] cmt. 4(a).
[14] *In the Matter of the Video Group, Inc. v Keidan (In re Video Group, Inc.)*, 1 B.R. 624, 627 (Bank. E.D. Mich. 1979).
[15] *Morgan County Feeders, Inc. v. McCormick*, 836 P.2d 1051, 1053 (Colo. Ct. App. 1992); UCC § 9-102 [Rev.] cmt. 4(a).
[16] *Id.*
[17] UCC § 9-102 [Rev.] cmt. 4(a) (emphasis added).
[18] A.P. Dkt. # 67-5, p. 5-6 (Ex. C – Markling Dep. 162:7-12, 20-22).

less than a year but later testified that whether a die lasted a year depended on how many pounds were ordered.[19] Mr. King testified that as a general rule the useful life of a die was less than a year but conceded that the determining factor of the life of the die was how many pounds of aluminum the customer wanted to run through the die annually, and whether it was a type of die that quickly wore away.[20] As to the racks, Mr. King testified that the racks were made from scrap and were broken back down into scrap, but that they lasted longer than a year.[21]

The Committee argues that the dies and racks are equipment because they are not used or consumed and because they have a long useful life. The Committee relies largely on the testimony of Mr. Wallace, the debtor's former plant manager. Mr. Wallace testified that the dies could last multiple years and that the debtor had approximately 90 that had lasted over a decade.[22] As to the racks, Mr. Wallace testified that the racks were made from raw aluminum.[23] He testified that the useful life of the rack depended on the quality

---

[19] A.P. Dkt. # 67-5, p. 5-6 (Ex. C – Markling Dep. 163:8-11); A.P. Dkt. # 85-2, p. 5 (Ex. B – Marking Dep. 40:5-10).
[20] A.P. Dkt. # 67-4, p. 15 (Ex. B – King Dep. 306:6-8); A.P. Dkt. # 72-3, p. 6-9 (Ex. C – King Dep. 72:24, 75:6).
[21] A.P. Dkt. # 67-4, p. 4, 12, 15-17 (Ex. B – King Dep. 66:23-24, 268:9-12, 306:22-25, 307:1-5, 307:21-25, 308:1-12).
[22] A.P. Dkt. # 69-1, p. 9-10 (Ex. A – Wallace Dep. 49:19-24, 52:1-21).
[23] A.P. Dkt. # 85-1, p. 4 (Ex. A – Wallace Dep. 40:22-23).

7

of the person that built them and that some lasted more than a year while some lasted less than a year.[24]

Whether the dies and racks are used or consumed in the business and whether they have a short or long useful life is a material question of fact that remains in genuine dispute. Further, Mr. Markling and the Floyd F. Markling Revocable Living Trust are guarantors of the loan from Triumph to the debtor, and therefore have an interest in seeing the sale proceeds go to Triumph to reduce their debt.[25] Mr. Markling's testimony contradicts the testimony of Mr. Wallace, who is a disinterested party. This necessitates a credibility determination that the Court cannot make based on the deposition testimony at the summary judgment stage.

## V. CONCLUSION

The parties filed cross-motions. Neither party met its summary judgment burden, so both motions are due to be denied. This adversary proceeding needs to go to trial to more fully develop the record.[26] Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that both *Triumph Bank's Motion for Summary Judgment* (A.P. Dkt. # 67) and *The Official Committee of*

---

[24] A.P. Dkt. # 85-1, p. 5-6 (Ex. A – Wallace Dep. 41:18-25, 42:1-8).
[25] A.P. Dkt. # 72, p. 8 n. 4
[26] *Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995) (a court has discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed).

8

*Unsecured Creditors of Aluminum Extrusions, Inc.'s Motion for Summary Judgment* (A.P. Dkt. # 69) are **DENIED.**

##END OF ORDER##